ORDERED.

**Dated:  September 26, 2019**

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

JONATHAN PUTNEY and JERI PUTNEY,

      Debtors.

_____/

Chapter 13
Case No. 3:18-bk-4022-JAF

JONATHAN PUTNEY and JERI PUTNEY,

      Plaintiffs,

v.

RHODES CAPITAL LLC,

      Defendant.

_____/

Adv. Pro. No. 3:18-ap-0185-JAF

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

This adversary proceeding came before the Court upon the complaint filed by Plaintiff-Debtors JONATHAN PUTNEY and JERI PUTNEY ("Debtors"), which seeks to determine the secured status of the claim held by Defendant-Creditor RHODES CAPITAL LLC ("Rhodes Capital") and to "strip off" Rhodes Capital's mortgage lien.  Upon a review of the evidence and applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

## BACKGROUND

On November 16, 2018 (the "Petition Date"), Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code.  Rhodes Capital holds a second mortgage (the "Second Mortgage Lien") on certain real property owned by Debtors located in Palm Coast, Florida (the "Property").  (Claim No. 12-1).  The first mortgagee holds a secured claim in the amount of $168,040.52, as of the Petition Date (the "First Mortgage Lien").  (Claim No. 10-1).  In December 2018, Debtors filed this adversary proceeding to "strip off" the Second Mortgage Lien.  The value of the Property on the Petition Date is the only disputed fact question.

## FINDINGS OF FACT

### A.    The Property

The Property is a three-bedroom, two-bathroom single family home with 1,594 square feet of livable space.  It is Debtors' primary residence.  Debtor Jonathan Putney (the "Husband") testified that he and his wife are the original owners of the Property and purchased the Property in February 2000.  The Property contains a screened-in, in-ground pool and a two-car garage.  John Meux ("Meux") provided expert testimony on behalf of Debtors and valued the Property at $164,000.  Henry Toland ("Toland") provided expert testimony on behalf of Rhodes Capital and valued the Property at $180,000.

Both experts agree that, with the exception of the roof needing to be replaced, the Property is in average overall condition.  The roof is the original roof and is roughly 19 years old.  Debtors received two estimates to replace the roof, both in the range of $12,000 to $12,500.  Both expert's appraisals accounted for the cost of the roof replacement in their respective valuations.

Meux valued the Property as of May 4, 2019, which was the day he completed his inspection.  Meux testified that he "absolutely could not" give a valuation of the Property as of the

Petition Date because doing so would be "a whole other appraisal." In contrast, Toland valued the home as of the Petition Date (referred to as a retrospective valuation). Both experts agree that home prices increased during the six months between the Petition Date and the date of Meux's valuation, but neither expert could provide a definite amount as to this increase.

Toland also testified that, as of the Petition Date, the median sale price for a home in "similar" size and age as the Property in the same neighborhood was roughly $180,000 for homes without an in-ground pool. For homes with an in-ground pool, Toland testified the median sale price for "similar" homes was roughly $222,500. However, Toland considered "similar" sized homes to be roughly 340 square feet larger than the actual livable space in the Property.

The parties dispute the total livable space in the Property. The Husband converted the two-car garage into a bedroom and living area for his father-in-law. The Husband added laminate flooring, insulation, air conditioning, and a finished ceiling. The Husband also added a small but functional bathroom to the garage. None of the work done to the garage was permitted or completed by a licensed professional. Toland included the two-car garage as livable space because he considered the area to be actually livable despite not being completed in a workmanlike manner. Toland estimated that, including the converted garage, the total livable space equaled 1,934 square feet. Meux did not include the garage as livable space because it was not permitted or completed in a workmanlike manner. The Court finds Meux's reasoning credible and finds that the converted garage should not be included as livable space. Thus, as stated above, the Court finds the total livable space of the Property to be 1,594 square feet.

**B.    Comparable home sales**

Both experts looked to recent sales of comparable homes to prove a reasonable and credible estimation of value.  (Doc. 9 at 4); (Doc. 12 at 4).  The experts adjusted those sales prices to compensate for differences between the Property and the comparable homes.  They then used the adjusted sales prices to arrive at an estimated valuation for the Property.  Generally, the comparable sale price is adjusted upward if the comparable lacks a price-positive aspect that the subject property contains (or contains a price-negative aspect the subject property lacks), and the comparable sale price is adjusted downward if the comparable contains a price-positive aspect that the subject property lacks (or lacks a price-negative aspect the subject property contains).[1]  Neither expert physically inspected any of the comparable homes.

Meux's Comparables 1 and 3 both lacked a pool.  As a result, Meux gave an upward adjustment of $7,000 to those two sale prices to compensate for the lack of a pool.  Toland, on the other hand, opined that homes in the same area tend to sell for roughly $40,000 more when the residence has an in-ground pool.  Toland explained that building a similar pool would cost roughly $30,000 plus an additional $10,000 to build the screen enclosure.  Toland opined that Meux's upward pool adjustment should have been at least $20,000, rather than $7,000.  When Meux was asked how he derived his pool adjustment, Meux said it was "market derived."  That is, Meux looked to a multiple listing service "to find" where such adjustments "are" and would then "come up with that number."  Meux did not discuss his listing database, what information was presented to him, or precisely how he used the information to derive a value for this pool adjustment.  Meux's

---

[1]  See generally Mocco v. City of Jersey City (In re Mocco), 222 B.R. 440, 457 (Bankr. D.N.J. 1998) (discussing the sales comparison approach to real estate valuation).  For example, an upward adjustment might be given to a sale price of a comparable home that is significantly older than the subject property in order to account for the price-negative impact of the comparable's older age.  Additionally, a downward adjustment may be given to the comparable sale price where the comparable has, for example, a roof of significantly higher quality than the subject property to account for the price-positive impact of the comparable's superior roof design.

explanation for his $7,000 pool adjustment is not credible.  It appears this adjustment was, primarily, a subjective determination.  The Court finds Toland's opinion on the pool adjustment to be credible and finds the adjusted sale price for Meux's Comparables 1 and 3 to be understated.

Meux's Comparable 2 contained an in-ground pool but had 118 fewer square feet of livable space than the Property.  Meux gave an upward adjustment of $4,130 to account for the reduced livable space—i.e., an upward adjustment of $35 for each square foot lacking in Comparable 2. The average *un*adjusted price per square foot for each of Meux's comparables equals $100.32 per square foot.  The average adjusted price per square foot for Meux's comparables equals $103.79 per square foot.  The Court finds the square-footage upward adjustment to Comparable 2 and the adjusted sale price of Comparable 2 to be, at least slightly, understated.

The Court will not determine how much greater these pool and square-footage adjustments should have been.  However, the Court finds Meux's understated adjustments to his comparable sales prices caused Meux to undervalue the Property.

Turning to Toland's appraisal, all of his comparables contained a screened-in pool and a two-car garage, like the Property.  Toland's three comparables contained square footages as follows:  2,088 square feet; 2,067 square feet; and 1,730 square feet.  These are significantly different from the Property's 1,594 square feet.  Toland made a $10,000 downward adjustment to each comparable for the loss of the use of the two-car garage in the Property and made downward square-footage adjustments to the two comparables with greater than 1,934 square feet.  However, Toland's adjustments do not account for the actual livable space of the Property, which is only 1,594 square feet.  Toland's comparables were substantially larger homes than the Property, and his downward adjustments did not reliably account for the actual disparity in size / livable space. This produced an overvalued result.

## CONCLUSIONS OF LAW

In a Chapter 13 case, a bankruptcy court may "strip off" a wholly unsecured lien on a debtor's principal residence under 11 U.S.C. § 506(a) and § 1322(b)(2).  Tanner v. FirstPlus Financial, Inc. (In re Tanner), 217 F.3d 1357, 1359 (11th Cir. 2000).  First, under § 506(a), the bankruptcy court must value the principal residence securing the lienholder's claim.  Id. at 1360.  Second, if the lienholder's claim is wholly unsecured in light of the court's valuation, the anti-modification provision in § 1322(b)(2) will *not* apply and the lien is stripped off.  Id.  If the lienholder's claim is at least partially secured, then § 1322(b)(2) controls and § 506(a) does not operate to strip off the lien.  The relevant date for valuation of the Property is the Petition Date.  See In re Sroka, 2014 WL 2808101, at *4 (Bankr. M.D. Fla. June 20, 2014); Alexander v. JP Morgan Chase (In re Alexander), 2014 WL 3672135, at *5 (Bankr. M.D. Fla. July 23, 2014).

"Valuation of assets 'is not an exact science and has inherent vagaries.'"  In re Brown, 289 B.R. 235, 238 (Bankr. M.D. Fla. 2003).  "A bankruptcy court is not bound by valuations submitted by appraisers and may form its own opinion as to the value of property."  Alexander, 2014 WL 3672135, at *5.  "Heightened scrutiny is appropriate when two competent appraisals are presented by qualified appraisers stating widely divergent values."  Id. "Rather than choosing one appraisal over another, that is accepting one and rejecting the other in its entirety, the better reasoned approach is to review all of the proposed comparables and include only those that assist the Court in its determination."  Id. (citing Brown, 289 B.R. at 238).  "[I]f the parties use common comparables but arrive at different adjusted sales prices, it is appropriate for the Court to review the adjustments and determine an appropriate adjusted sales price."  Id.

Here, under these facts, a correct valuation is a close determination on which reasonable people may differ.  The Court has considered the entirety of the evidence, as well as the credibility

and demeanor of the two experts.  In addition to the other evidence and credibility of the witnesses, the Court finds the following facts critical to its ultimate finding:  a) Meux did not accurately account for the Property's condition on the Petition Date because he failed to do a retrospective valuation; b) Meux undervalued the pool and, in turn, understated his adjusted sales prices for Comparables 1 and 3; c) Meux undervalued the increased livable space of the Property, over Comparable 2's livable space, and understated his adjusted sales price for Comparable 2; d) Meux's use of understated comparable sale prices resulted in undervaluing the Property; e) Toland overestimated the square footage of the Property and, in turn, used comparables that were not reliably similar to the Property; f) Toland's use of unreliable comparables resulted in an overvaluation of the Property; g) broad market conditions in the subject area tended to favor increasing home prices; h) there is no disagreement between the experts as to objective assessments, such as the general condition of the home and that the single biggest problem is the need for a new roof; and i) the key points of disagreement between the two experts rested on largely subjective determinations rather than any objective assessment.

As is often the case, Debtors' expert undervalues the Property while the creditor's expert overvalues the Property.  The proper valuation lies between the two competing valuations, given the facts of this proceeding.  The Court finds the proper valuation of the Property, as of the Petition Date, is $173,265.  Because the value of the Property on the Petition Date is greater than the debt securing the First Mortgage Lien, the Second Mortgage Lien is not subject to strip off under 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b).[2]  The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.

---

[2]  This result may lead to a Pyrrhic victory for Rhodes Capital.  The Court suggests the parties consider negotiating a mortgage modification if doing so would be in their best interests.